**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nadeem Hassan, | No. CV-04-2251-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael Chertoff, Secretary of Department of Homeland Security, et al., | |
| Defendants. | |

The court has before it defendants' motion to dismiss (doc. 27), plaintiff's[1] response (doc. 29), defendants' reply and motion for leave to file a late reply (doc. 30), and plaintiff's objection to the motion for leave to file a late reply (doc. 31).[2] The motion to file the late reply is hereby granted (doc. 30).

---

[1] Notwithstanding that Nadeem Hassan's wife, Amber Hassan, was added as a plaintiff in the amended complaint, we refer only to Nadeem Hassan for ease of discussion. However, this order applies to both plaintiffs.

[2] Plaintiff's objection to defendants' motion for leave to file a late reply is not a proper objection, but instead is a sur-reply not permitted by the rules. Nevertheless, we have considered all arguments asserted by the parties.

**I**

Plaintiff, a native and citizen of Pakistan, lived with his family in Phoenix, Arizona for a number of years. On January 9, 2002, he filed a Form I-485 (Application to Register Permanent Residence or Adjust Status). The government interviewed him on July 25, 2005 and December 8, 2005, in connection with his adjustment of status application. On December 8, 2005, while his application was still pending, plaintiff applied for and received travel documents, including approval for advance parole (Form I-512), in anticipation of a trip outside the United States. On December 30, 2005, plaintiff traveled to Saudi Arabia. On January 13, 2006, while plaintiff was outside the United States, the Citizenship and Immigration Services (CIS) denied plaintiff's status adjustment application and revoked his advance parole authorization. Plaintiff returned to the United States on January 19, 2006, applied for admission at JFK International Airport, and was detained by Department of Homeland Security officials. Because his advance parole had been revoked, plaintiff was removed from the United States via expedited removal procedures as an "arriving alien" not in possession of valid entry documents. 8 U.S.C. § 1225(b)(1). Plaintiff did not move to have that order reopened and reconsidered and the opportunity to do so has now expired. 8 C.F.R. § 103.5. However, he has filed a Form I-212 application for waiver of inadmissibility, which remains pending.

Defendants' denial of adjustment of status and revocation of parole was based in part on the determination that plaintiff was ineligible for adjustment of status because of his association with an organization known as Jamaat al Tabligh ("JT"), a group identified as a terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(vi)(III), in that it allegedly provides material support to al Qaida and the Taliban. Accordingly, the CIS district director concluded that plaintiff was inadmissible and ineligible for adjustment of status pursuant to 8 U.S.C. § 1182(a)(3)(B)(iv)(VI) (engaging in terrorist activity by providing material support to a terrorist organization), and 8 U.S.C. § 1182(a)(3)(B)(iv)(V) (soliciting individuals for membership into a terrorist organization). As an independent basis for denying plaintiff's application, the district director found that plaintiff failed to make full and truthful

disclosures in completing his Form I-485 application when he failed to list his membership in four organizations, including the JT. See 8 U.S.C. § 1182(a)(6)(C)(i) (an alien who by fraud or willfully misrepresents a material fact while seeking to procure a visa is inadmissible).

In addition to these findings of inadmissibility, the district director also denied plaintiff's application as a matter of discretion. Noting that adjustment of status is an act of administrative grace–an extraordinary benefit that should be granted only in meritorious cases–the district director concluded that, because of national security concerns, the favorable exercise of discretion was not warranted in this case.

Plaintiff now challenges the denial of his adjustment of status application, arguing that CIS improperly failed to follow its own regulations, which require that he have an opportunity to present rebuttal evidence before the decision was rendered. In addition, he argues that advance parole was improperly revoked, that he was entitled to parole upon return to the United States, and that he should be allowed to return to the United States and either resume his adjustment application or appeal the denial in a 240 removal proceeding.[3]

**II**

The central issue before us is whether we have jurisdiction to consider plaintiff's claims. Pursuant to 8 U.S.C. § 1255(a), Congress gave the Attorney General broad discretion to adjust the status of an eligible alien to that of a lawful permanent resident. Under § 1255(a), a status adjustment application must meet several prerequisites: (1) the alien must have been "inspected and admitted or paroled" into the United States; (2) he must have submitted an application for adjustment of status; (3) an immigrant visa must be "immediately available" to the alien at the time the adjustment application is filed; and (4) he must be "eligible to receive an immigrant visa and . . . admissible to the United States for permanent residence." 8 U.S.C. § 1255(a); see also 8 C.F.R. § 245.1(a), .2(a). In addition,

---

[3]The regulations provide that "[n]o appeal lies from the denial of an adjustment application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [240 removal] proceedings." 8 C.F.R. § 245.2(a)(5)(ii)

1  an adjustment of status applicant must demonstrate that he merits status adjustment in the
2  exercise of the Attorney General's discretion. 8 U.S.C. § 1255(a); see also Elkins v. Moreno,
3  435 U.S. 647, 667, 98 S. Ct. 1338, 1350 (1978) ("adjustment of status is a matter of grace,
4  not right").

5  Plaintiff contends that this court has jurisdiction under either the Administrative
6  Procedure Act, 5 U.S.C. § 704; the Mandamus Act, 28 U.S.C. § 1361; or 28 U.S.C. § 1331,
7  pursuant to federal question jurisdiction. Defendants argue, in contrast, that our jurisdiction
8  is limited by 8 U.S.C. § 1252(a)(2)(B), which specifically addresses the jurisdiction of
9  federal courts to review decisions regarding adjustment of status under § 1255, or any other
10 decision expressly stated to be within the Attorney General's discretion.

11 It is well established that a "general statute cannot confer jurisdiction when a more
12 specific statute explicitly denies it." Vinieratos v. U.S. Dept. of Air Force, 939 F.2d 762, 774
13 (9th Cir. 1991). In May 2005, Congress enacted the REAL ID Act, which provides that the
14 jurisdictional strictures of § 1252(a)(2)(B) apply, "[n]otwithstanding any other provision of
15 law (statutory or nonstatutory), including . . . sections 1361 [Mandamus Act] and 1651 [All
16 Writs Act] of [Title 28], . . . and regardless of whether the judgment, decision, or action is
17 made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B). By virtue of this amendment,
18 Congress made clear that this court has no jurisdiction under the APA, the Mandamus Act
19 or "any other provision of law," to review a decision to grant or deny relief under certain
20 expressly enumerated provisions set forth in 8 U.S.C. § 1252(a)(2)(B)(i), including the denial
21 of an application for adjustment of status under 8 U.S.C. § 1255. Accordingly, our
22 jurisdiction vel non is derived from § 1252(a)(2)(B).

23 In the present case, CIS denied the adjustment application based not only on
24 inadmissibility considerations, but also as a matter of discretion. First, CIS determined that
25 the plaintiff was inadmissible as an alien found to have engaged in terrorist activity, and for
26 misrepresenting material facts in his application. Second, CIS denied plaintiff's application
27 as a matter of discretion based on national security concerns. In either case, we do not have
28 jurisdiction to hear plaintiff's claims. Section 1252(a)(2)(B) broadly states that "no court

- 4 -

1 shall have jurisdiction to review any judgment regarding the granting of relief under section 1255 . . . [or] any other decision . . . specified . . . to be in the discretion of the Attorney General." It is incontrovertible that the denial of an application for adjustment of status is within the broad discretion of the Attorney General. Therefore, we are without jurisdiction to review the denial of adjustment.

Plaintiff contends, however, that the jurisdictional limitation of § 1252(a)(2)(B) does not apply because he is not appealing a discretionary decision denying his application, but instead is asserting that his constitutional due process rights were violated by the defendants' failure to follow their own regulations in the decision making process, when they deprived him of the opportunity to submit rebuttal evidence related to his adjustment application, as required by 8 C.F.R. §§ 103.2(b)(8) and 103.2(b)(16)(i). In his amended complaint, plaintiff asks us to issue a writ of mandamus, under 28 U.S.C. § 1361, to compel the defendants to perform their nondiscretionary duty to allow him to present rebuttal evidence.

Here, the decision to deny plaintiff's application was based in large part on his involvement with the JT. CIS found that when plaintiff was questioned about the JT during two separate interviews, he offered conflicting testimony about the nature of, and his involvement in, the group. Plaintiff initially denied that the JT was even an organization, but ultimately admitted that not only was it an established organization, but that he held a position of responsibility in it. CIS concluded that plaintiff was ineligible for adjustment of status because he made misrepresentations of material facts in his application.

As an additional ground for finding plaintiff ineligible for adjustment of status, CIS relied upon a report by the FBI, which concluded that the JT is engaged in terrorist activities, and that plaintiff provided material support to this organization. Although plaintiff was specifically questioned about his involvement in the JT, and therefore had an opportunity to explain his association with the group, he complains that CIS failed to disclose the FBI report and provide him an opportunity to rebut its contents. Plaintiff argues that pursuant to 8

C.F.R. §§ 103.2(b)(8) and 103.2(b)(16)(i), CIS was required to disclose the FBI report and afford him an opportunity to rebut its contents.[4]

Regardless of how plaintiff characterizes his claim, this is essentially an appeal from the denial of his adjustment of status application. We recognize that courts have limited the scope of the § 1252(a)(2)(B) jurisdictional bar to discretionary decisions only, and not to purely legal, and hence non-discretionary questions. See, e.g., Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1144 (9th Cir. 2002) (holding that court has jurisdiction to review nondiscretionary, statutory eligibility determinations). However, here, plaintiff contends that he was not afforded the appropriate procedures in the application process, and that this failure resulted in an improper denial of his application. This is not an issue of statutory or regulatory construction as in Montero-Martinez, but instead is a challenge to CIS' application of unambiguous regulations to the facts of a particular case. This is the kind of claim appropriately raised in an appeal of the underlying decision. As previously stated, Congress

---

[4] Although we do not reach the merits of plaintiff's claim, we note that 8 C.F.R. § 103.2(b)(8) does not serve to confer rights upon plaintiff. Section 103.2(b)(8) provides that when there is no evidence of ineligibility and initial evidence is missing or raises questions regarding eligibility, CIS may request the missing initial evidence and allows, but does not require, CIS to request additional evidence. This provision does not apply here because (1) there is no allegation that initial evidence was missing, (2) the decision to request additional evidence is discretionary, and (3) in any event this provision does not require CIS to disclose any evidence, including the FBI report.

Similarly, it is questionable whether 8 C.F.R. § 103.2(b)(16)(i) imposed any obligation on defendants under the circumstances of this case. This regulation provides that when a decision "will be adverse to the applicant . . . and is based on derogatory information," the applicant "shall be advised of this fact and offered an opportunity to rebut the information and present information in his own behalf before the decision is rendered." 8 C.F.R. § 103.2(b)(16)(i). Over the course of two interviews, plaintiff was specifically questioned about his involvement in the JT, thereby providing plaintiff notice of defendants' interest in the group and an opportunity to explain his association with it. Moreover, plaintiff's involvement in the JT was only one of the stated reasons for denying his adjustment application. His failure to adequately and truthfully complete the application was an independent basis to deny the application, which would not implicate any disclosure obligation under § 103.2(b)(16)(i).

1 has divested this court of jurisdiction to consider such appeals. See 8 U.S.C. §
2 1252(a)(2)(B).

Even if we were persuaded that the question presented is purely legal, and thus non-discretionary, we are faced with the question of whether the issues in this case present a live case or controversy. A case loses its character as a present, live controversy and becomes moot when the court no longer can issue any effective relief. Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001). Given the procedural posture of this case, our review of the procedures applied by CIS in its decision making process is incapable of providing any effective relief. To be eligible for an adjustment of status, an applicant must be "admissible." 8 U.S.C. § 1255(a). An alien who was "previously removed" is not "admissible." 8 U.S.C. § 1182(a)(9). Plaintiff's advance parole was revoked,[5] rendering him an "arriving alien" without valid entry documents upon his return, and consequently subject to expedited removal. Because plaintiff was removed, he is ineligible for adjustment of status. Any decision by this court will have no effect on the removal order entered and executed in New York. Moreover, even if we had jurisdiction to review the removal order, review is restricted to habeas corpus proceedings, 8 U.S.C. § 1252(e), and the limited scope of review prohibits review of inadmissibility determinations. 8 U.S.C. § 1252(e)(5). The inevitable conclusion is that plaintiff remains removed, rendering him inadmissible, and consequently ineligible for adjustment of status. Therefore, our reconsideration of the adjustment denial is incapable of providing plaintiff with any effective relief, and accordingly the issue presented is moot. See Nyaga v. Ashcroft, 323 F.3d 906, 916 (11th Cir. 2003) ("Because we conclude that Nyaga is no longer eligible to receive a visa, the district court could not provide meaningful relief to the Plaintiffs and the court was compelled to dismiss this case as moot.").

---

[5] We note that plaintiff left the United States while his adjustment application was pending against the advice of his lawyer. Amended Complaint ¶ 32. He was warned that if he left the country, it was possible that CIS would deny his application in their discretion, possibly resulting in his immediate removal. Id. Arguably, this decision constitutes a knowing waiver of his rights under 8 C.F.R. § 245.2(a).

- 7 -

1    Finally, even if we concluded that we had jurisdiction to consider plaintiff's
2 constitutional challenge, we would nevertheless reach the same result because plaintiff had
3 no constitutional right to the regulatory process. Relying on United States ex rel. Accardi
4 v. Shaughnessy, 347 U.S. 260, 268, 74 S. Ct. 499, 504 (1954), plaintiff argues that the failure
5 of an agency to follow its own regulations violates the Due Process Clause. However, "an
6 expectation of receiving process is not, without more, a liberty interest protected by the Due
7 Process Clause." Olim v. Wakinekona, 461 U.S. 238, 250 n.12, 103 S. Ct. 1741, 1748 n.12
8 (1983). "Process is not an end in itself. Its constitutional purpose is to protect a substantive
9 interest to which the individual has a legitimate claim of entitlement." Id. at 250, 103 S. Ct.
10 at 1748. It is well established that the availability of discretionary benefits does not create
11 a liberty interest. See, e.g., Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1167 (9th Cir. 2004)
12 ("aliens have no fundamental right to discretionary relief from removal for purposes of due
13 process and equal protection"); Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir. 2003)
14 ("[s]ince discretionary relief is a privilege created by Congress, denial of such relief cannot
15 violate a substantive interest protected by the Due Process clause"). Moreover, the
16 application process for a discretionary benefit cannot itself constitute a protected liberty
17 interest. Olim, 461 U.S. at 250, 103 S. Ct. at 1748 ("An expectation of receiving process is
18 not, without more, a liberty interest protected by the Due Process Clause. . . . The Court of
19 Appeals thus erred in attributing significance to the fact that the prison regulations require
20 a particular kind of hearing before the administrator can exercise his unfettered discretion.");
21 Nguyen v. Gonzales, 400 F.3d 255, 259 (5th Cir. 2005) (rejecting argument that aliens have
22 a due process right to a discretionary relief hearing, because "neither relief from removal
23 under discretionary waiver nor eligibility for such discretionary relief is entitled to due
24 process protection") (emphasis omitted). Therefore, because the relief sought was entirely
25 discretionary, the regulatory process related to the application for such discretionary relief
26 affords no liberty interest.

**III**

Plaintiff argues that even if we leave undisturbed the denial of the adjustment application, he nevertheless is entitled to renew his application in a 240 removal proceeding because he was not an "arriving alien" upon his return to the United States. 8 C.F.R. § 245.2(a)(5)(ii) ("[n]o appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [240 removal] proceedings"). Plaintiff contends that because he obtained advance parole prior to leaving the country, he should have been treated as a non-arriving alien upon his return and placed in a 240 proceeding where he could appeal the denial of his adjustment application.

We do not have jurisdiction to review the revocation of plaintiff's advance parole. The Attorney General has broad discretion to grant or revoke parole, 8 U.S.C. § 1182(d)(5)(A) ("[t]he Attorney General may . . . in his discretion parole into the United States . . . any alien"); see also Samirah v. O'Connell, 335 F.3d 545, 547-48 (7th Cir. 2003), cert. denied, 541 U.S. 1085, 124 S. Ct. 2811 (2004) ("the Attorney General has the discretion to revoke advance parole after it has been granted"). Because Congress expressly specified that the authority to grant or revoke parole is within the discretion of the Attorney General judicial review of that decision is precluded. See 8 U.S.C. § 1226(e) (barring review of the "grant, revocation, or denial of . . . parole"); 8 U.S.C. § 1252(a)(2)(B) (barring review of decisions committed to the discretion of the Attorney General); Samirah, 353 F.3d at 549 (holding that the decision to grant or revoke parole is "squarely within the ambit of § 1252(a)(2)(B)(ii), . . . [and a] district court lack[s] jurisdiction to review, much less reverse, the revocation of . . . parole"). Therefore, according to 8 U.S.C. § 1252(a)(2)(B), we have no jurisdiction to review the revocation of plaintiff's advance parole.

**IV**

Based on the foregoing, we conclude that we lack jurisdiction to consider the issues presented in plaintiff's amended complaint.  Therefore, **IT IS ORDERED GRANTING** defendants' motion to dismiss (doc. 27).  **IT IS FURTHER ORDERED GRANTING** defendants' motion for leave to file a late reply (doc. 30).

DATED this 30th day of October, 2006.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge